Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ERIK SALAIZ**, individually, and on behalf of all others similarly situated, | § § § | Civil Action No.:  3:25-cv-106 |
| Plaintiff, | § § | **CLASS ACTION COMPLAINT** |
| v. | § § | |
| **HEADSTART WARRANTY GROUP LLC,** a Nevada Limited Liability Company, and **LINE 5, LLC DBA TEXAS LINE 5, LLC,** a Florida Limited Liability Company | § § § § § § | |
| Defendants. | § § § § | |

## PRELIMINARY STATEMENT

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants HEADSTART WARRANTY GROUP LLC (hereinafter "Headstart") and LINE 5, LLC DBA TEXAS LINE 5, LLC (hereinafter "Line 5") to stop their illegal practice of sending unsolicited rorbocalls to consumers residential telephone numbers, and to obtain redress for all persons injured by their conduct. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received

1

illegal telemarketing calls from and/or on behalf of Defendants Headstart and Line 5. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

1.     As part of their marketing campaign, Defendants Headstart and Line 5 sent unsolicited robocalls through their agents to thousands of consumers whose phone numbers using an artificial or prerecorded voice.

2.     Defendants Headstart and Line 5 did not obtain consent prior to sending these unsolicited robocalls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.     Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4.     The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5.     The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6.     By sending these robocalls to people without their prior express written consent, Defendants Headstart and Line 5 violated the privacy and statutory rights of Plaintiff and the Class.

7.     Plaintiff therefore seeks an injunction requiring Defendants Headstart and Line 5 to stop their unconsented robocalling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

8.      Plaintiff Erik Salaiz is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

9.      Defendant Headstart is a limited liability company organized and existing under the laws of Nevada.

10.     Defendant Line 5 is a limited liability company organized and existing under the laws of Florida.

11.     Defendants Headstart and Line 5 are hereinafter referred to collectively as "Defendants".


**JURISDICTION AND VENUE**

12.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13.     This Court has specific personal jurisdiction over Defendants Headstart and Line 5 because they caused the violating call to be sent to Plaintiff in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.


**COMMON FACTUAL ALLEGATIONS**

15.     Defendant Headstart is the administrator of vehicle service contracts (hereinafter "VSC's").

16.     Defendant Line 5 operates as the payment processor for Defendant Headstart's VSC's.

17.     Defendants sent out unsolicited robocalls using an artificial or prerecorded voice soliciting Plaintiff and the putative class for Defendant Headstart's VSC's.

3

18.     Defendants failed to obtain prior express written consent from Plaintiff or the putative class.

## PLAINTIFF'S FACTUAL ALLEGATIONS

19.     Plaintiff is a natural person who resides in this District.

20.     Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Plaintiff's telephone number ending in -9280 is a residential number and is registered with a cellular telephone service.

22.     Plaintiff's telephone number ending in -9280 is used for personal purposes and is not associated with any business.

23.     Defendant Headstart is the administrator of VSC's.

24.     Defendant Headstart targets consumers who have vehicles that have surpassed their factory warranty coverage.

25.     Defendant Headstart hires and contracts with entities such as JEA Management Services d/b/a covered auto (hereinafter "JEA") to sell Defendant Headstart's VSC's.

26.     Defendant Headstart is the entity that will pay for a covered repair under the VSC.

27.     Defendant Line 5 handles the customer management, payment processing, and also provides financing for Defendant Headstart's VSC's.

28.     Together, Defendants Headstart and Line 5 operate as a common enterprise.

29.     As part of their Defendants marketing campaign, and to generate business for this common enterprise, Defendants Headstart and Line 5 engage in illegal telemarketing and place unsolicited calls through JEA to thousands of consumers residential phone numbers nationwide.

30.     Defendants Headstart and Line 5's telemarketing campaign employs the use of an artificial or prerecorded voice.

31.     Plaintiff fell victim to the Defendants' telemarketing campaign as he received at least one unsolicited robocall from JEA on behalf of Defendants Headstart and Line 5.

4

32.    Upon information and belief, Plaintiff has received more unsolicited robocalls on behalf of Defendants Headstart and Line 5 within the past two years that are unknown to Plaintiff at this time but will be revealed through the Defendants' telephone records in discovery.

33.    Upon information and belief, Defendants telemarketing campaign has reached hundreds if not thousands of other consumers' residential telephone numbers nationwide.

34.    Upon information and belief, Defendants Headstart and Line 5 both willfully engage in illegal telemarketing for economic gain.

35.    On October 1, 2024, Plaintiff Salaiz received a robocall to his phone number ending in -9280 from phone number (629) 921-2336.

36.    When Plaintiff answered the call, Plaintiff heard an artificial or prerecorded voice regarding Plaintiff's vehicle.

37.    The call was clearly pre-recorded because (a) it was sent with automated technology used to mask Caller IDs (b) it used a singular monotone voice and (c) there was a pause prior to the recorded message being played.

38.    Upon information and belief, Defendant Headstart and/or JEA programs the artificial or prerecorded voice using AI technology that allows the AI system to ask the caller qualifying questions prior to connecting to a live agent.

39.    Defendant Line 5 is well aware Defendant Headstart employs the use of an artificial or prerecorded voice to promote its VSC's.

40.    The artificial or prerecorded voice advised Plaintiff the call was regarding coverage on Plaintiff's vehicle.

41.    The artificial or prerecorded voice asked Plaintiff how many miles were on Plaintiff's vehicle in attempt to qualify Plaintiff for a VSC on behalf of Defendants Headstart and Line 5.

42.    The artificial or prerecorded voice does not identify either Defendants Headstart or Line 5.

5

43.     Plaintiff Salaiz engaged in the call as it was the only way to ascertain who was behind the illegal robocall.

44.     Plaintiff was then connected to a live agent named Thomas Martinez ("Martinez").

45.     Martinez asked Plaintiff qualifying questions regarding Plaintiff's vehicle make, model, year, mileage, and solicited Plaintiff for a VSC on behalf of all Defendants Headstart and Line 5.

46.     Thomas advised Plaintiff the cost of the VSC would be $123.88/month for 43 months.

47.     Defendants Headstart and Line 5 would both benefit financially through the VSC Thomas solicited to Plaintiff.

48.     While on the call with Thomas, Plaintiff received a series of emails from customerservice@line5.com that contained Plaintiff's VSC along with the "retail installment contract" from Defendant Line 5.



**VEHICLE SERVICE AGREEMENT**
**Stated Coverage**

| Schedule Page | | | | | Agreement Number 131843 |
|---|---|---|---|---|---|

**CUSTOMER INFORMATION**

| Agreement Holder<br>Erik Salaiz | | | Telephone Number<br>(915) 252-9280 | Email<br>salaiz.ep@gmail.com | |
|---|---|---|---|---|---|
| Address<br>6320 NAVAJO AVE | | | City<br>El Paso | ST<br>TX | Zip<br>79925 |

**VEHICLE INFORMATION**

| Year<br>2021 | Make<br>HONDA | Model<br>ACCORD SPORT SE | | | |
|---|---|---|---|---|---|
| Vehicle Identification Number<br>1HGCV1F44MA094657 | Current Odometer Reading<br>75,133 | Waiting Period<br>[30 days] and [1,000 miles] | Agreement Expiration Date (Term)<br>60 | | Agreement Expiration Odometer (Miles)<br>175,133 |
| Agreement Purchase Date<br>2024-10-01 | Agreement Purchase Price<br>3,874 | | Vehicle Purchase Price<br>$29,675.00 | | |

**SELLER INFORMATION**

| Seller<br>Covered Auto | | Telephone Number<br>(888) 547-3794 | |
|---|---|---|---|
| Address<br>20501 ventura blvd #350 | City<br>Woodland Hills | State<br>CA | Zip<br>91364 |

**LIENHOLDER INFORMATION**

| Lienholder<br>Line 5, LLC | Address<br>P.O. Box 112737 | City/State<br>Naples | FL | Zip<br>34108 |
|---|---|---|---|---|
| $ 100          DEDUCTIBLE (per occurrence) | SURCHARGES/OPTIONS | | | |

| BUYER | SELLER |
|---|---|
| Erik Salaiz | Covered Auto- AP |
| 6320 NAVAJO AVE | 18801 Ventura Blvd, STE 304 |
| El Paso, TX 79925 | Tarzana, CA 91356 |

RETAIL INSTALLMENT CONTRACT
(Use Only for Vehicle Protection Plan(s) and Vehicle-Related Product(s) Sold by Dealer)

DATE: 10/01/2024

TRANSACTION # 254313

Texas Line5, LLC ("L5")
(844) 775-4635
info@line5.com

In this Retail Installment Contract (the "Contract"), "you" and "your" refer to the Buyer identified above. "We," "us" and "our" refer to the Seller shown above and, after assignment of this Contract, to the assignee, Texas Line5, LLC ("Line 5"). You may buy the vehicle protection plan(s) and other vehicle-related product(s) described below (individually and together referred to as the "Protection Plan") for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this Contract, you choose to buy the Protection Plan on credit from the Seller, as described in this Contract. The Protection Plan is sold by the Seller and is issued and administered by the Administrator (the "Administrator") named in the Protection Plan documents ("Protection Plan Documents"). The Protection Plan features and limitations, along with details regarding the Administrator are described in the Protection Plan Documents you will receive from the Seller. The term "Protection Plan" includes any rebates, benefits, proceeds or other payments issued in connection with the Protection Plan. The Truth-in-Lending Disclosures below are part of this Contract.

Vehicle Subject Protection Plan: (1HGCV1F44MA094657) 2021 Honda Accord

| TRUTH-IN-LENDING DISCLOSURES | | | |
|---|---|---|---|
| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 |
| 18.49% | $ 1,452.84 | $ 3,874.00 | $ 5,326.84 | $ 5,326.84 |

| Payment Schedule | | |
|---|---|---|
| Number of Payments | Amount of Each Payment | Payments are due monthly |
| 43 | $123.88 | Beginning on 10/31/2024 |

49.     The VSC Plaintiff received lists JEA as the seller, Defendant Headstart as the administrator, and Defendant Line 5 as the lienholder.

50.     The VSC Plaintiff received identified Defendants Headstart and Line 5.

51.     Plaintiff never provided his prior express written consent to receive the alleged call.

52.     The call was a nonconsensual encounter that was not made for emergency purposes.

53.     The call was made to Plaintiff for the purpose of encouraging a VSC on behalf of Defendants Headstart and Line 5.

54.     Neither Defendant Headstart nor Line 5 have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through their agents.

55.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain neither Defendants registration.

56.     Neither Defendant Headstart nor Line 5 qualifies for an exemption under § 302.053.

57.     Plaintiff has never been a customer of either Defendant and never knew who Defendants Headstart or Line 5 were prior to receiving the robocall.

7

58.     Plaintiff was harmed by the robocall.

59.     Plaintiff was temporarily deprived of legitimate use of his phone because his privacy was improperly invaded. Moreover, the robocall injured Plaintiff because it was frustrating, obnoxious, annoying, and was a nuisance and disturbed the solitude of Plaintiff.


## BASIS FOR LIABILITY


60.     Plaintiff realleges paragraphs one through fifty-eight and incorporates them herein as if set forth here in full.

61.     Even if Defendants Headstart and Line 5 did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

62.     Plaintiff realleges paragraphs one through sixty and incorporates them herein as if set forth here in full.

63.     Defendant Headstart hired JEA to sell Headstart's VSC's.

64.     Defendants Headstart and Line 5 authorized JEA to generate prospective customers through illegal telemarketing calls.

65.     Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

66.     In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing

"on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

67.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

68.     JEA solicited Plaintiff for a VSC on behalf of Defendants Headstart and Line 5. Accordingly, JEA had the Defendants' actual authority to solicit Plaintiff through illegal telemarketing calls.

## APPARENT AUTHORITY

69.     Plaintiff realleges paragraphs one through sixty-eight and incorporates them herein as if set forth here in full.

70.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the

seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

71.     Defendants Headstart and Line 5 authorized JEA to generate prospective business for Defedants through illegal telemarketing.

72.     JEA called and solicited Plaintiff for a VSC on behalf of Defendants. The integration of their sales efforts was so seamless that it appeared to Plaintiff that JEA and Defendants Headstart and Line 5 all appeared to be acting together as the same company.

73.     Plaintiff reasonably believed and relied on the fact that JEA had received permission to sell, market, and solicit VSC's on behalf of Defedants.

74.     As a direct and proximate result of  JEA's illegal phone calls – which were made on behalf of and with the apparent authority of Defendants Headstart and Line 5, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

75.     Plaintiff realleges paragraphs one through seventy-four and incorporates them herein as if set forth here in full.

76.     Defendants Headstart and Line 5 knowingly and actively accepted business that originated through the illegal calls placed by JEA.

77.     By accepting these contacts with the robocall victims, JEA "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendants, as described in the Restatement (Third) of Agency.

78.     JEA called Plaintiff to solicit him for a VSC on behalf of Defendants.

79.     Defendants ratified JEA's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

80.     Defendants further ratified JEA's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

81.     As a direct and proximate result of JEA's illegal phone calls, Plaintiff and Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE DEFENDANTS' ACTIONS

82.     Plaintiff realleges paragraphs one through eighty-one and incorporates them herein as if set forth here in full.

83.     The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

84.     The calls harmed Plaintiff by trespassing upon and interfering with his rights and interests in his cellular telephone.

85.     The calls harmed Plaintiff by intruding upon his seclusion.

86.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## CLASS ALLEGATIONS

87.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

     i.   **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) Defendants called and/or any entity making calls on behalf of Defendants.

11

ii. **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendants called any and/or any entity making calls on behalf of Defendants.

88.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

89.    **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, the Defendants' sent unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through the Defendants' records.

90.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of the Defendants' uniform wrongful conduct and unsolicited calls.

91.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

92.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because the Defendants' have acted or refused to act on grounds generally applicable

to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. The Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on the Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

93.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.  Whether the unsolicited calls were caused by the Defendants';

    b.  Whether the unsolicited calls promoted the Defendants' products or services;

    c.  Whether the Defendants' obtained written express consent prior to sending the unsolicited robocalls

    d.  Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendants' conduct.

94.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from the Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties

and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**First Cause of Action:**
**Violation of  47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

95.     Plaintiff realleges paragraphs one through ninety-four and incorporates them herein as if set forth here in full.

96.     The Defendants' placed unsolicited phone robocalls through JEA to Plaintiff and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

97.     The calls were made for the express purpose of soliciting consumers for VSC's on behalf of the Defendants'.

98.     When Plaintiff and the Class answered, the calls played an artificial or prerecorded voice to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

99.     As a result of its unlawful conduct, the Defendants' repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

100.    The Defendants' made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

101.    If the court finds that the Defendants' willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

14

**Second Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

102.    Plaintiff realleges paragraphs one through one hundred and one and incorporates them herein as if set forth here in full.

103.    The Defendants' sent illegal solicitation sales calls through JEA to Plaintiff and the putative class without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

104.    Upon information and belief, the actions of the Defendants' also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

105.    A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

106.    Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

107.    As a result of the Defendants' violations of the Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

108.    As a result of the Defendants' violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ERIK SALAIZ, individually and on behalf of the Class, prays for the following relief:

15

A.    An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.    An order declaring that the Defendants' actions, as set out above, violate 227(b) of the TCPA;

C.    An order declaring that the Defendants' actions, as set out above, violate 302.101 of the Texas Business and Commerce code;

D.    An order declaring that the Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

E.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) for each intentional violation;

F.    An order declaring that the Defendants' actions, as set out above, violate the Texas Business and Commerce code willfully and knowingly;

G.    An award of $5,000 in statutory damages arising from the Texas Business and Commerce code 302.101 for each intentional violation;

H.    An injunction requiring the Defendants' to cease sending all unlawful calls;

I.    An award of reasonable attorneys' fees and costs; and

J.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: March 31, 2025,                    Respectfully submitted,


                                          By:  /s/ Mark L. Javitch
                                          Mark L. Javitch (California SBN 323729)
                                          JAVITCH LAW OFFICE
                                          3 East 3rd Ave. Ste. 200

16

San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*